IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| IVAN SMITH, | ) |
| | ) |
| Movant/Defendant, | ) |
| | ) |
| v. | ) Civ. A. No. 09-533-GMS |
| | ) Cr. A. No. 04-11-GMS |
| | ) |
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Respondent/Plaintiff. | ) |

## MEMORANDUM OPINION[1]

_____

Ivan Smith. *Pro se* movant.

Mark M. Lee, Assistant United States Attorney, United States Department of Justice, Wilmington, Delaware. Attorney for respondent.

_____

$S\!\Rightarrow\!\!\rho\!\uparrow$ 7  , 2012
Wilmington, Delaware

_____

[1]This case was originally assigned to the Honorable Kent A. Jordan, who presided over Smith's underlying criminal proceeding. The case was re-assigned to the undersigned when Smith filed his § 2255 motion.


SLEET, Chief Judge

## I. INTRODUCTION

Movant Ivan Smith ("Smith") filed a *pro se* motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 (D.I. 132) and an amended § 2255 motion (D.I. 148) (hereinafter collectively referred to as "§ 2255 motion."). The Government filed its answer in opposition. (D.I. 157) For the reasons discussed, the court has determined that a portion of claim two cannot be resolved without an evidentiary hearing pursuant to Rule 8 of the Rules Governing Section 2255 proceedings. Specifically, Smith is entitled to an evidentiary hearing to establish if one of his defense attorneys failed to communicate the government's formal plea offer. However, all other claims contained in Smith's § 2255 motion will be denied without holding an evidentiary hearing.

## II. BACKGROUND[2]

On December 2, 2003, at approximately 11:15 p.m., Detectives Taylor, Silva, Leary, and Pfaff of the Wilmington Police Department's Drug, Organized Crime and Vice Division, were driving in an unmarked police vehicle in a part of the city known to be a regular site of street-level drug trafficking. Detective Taylor and Detective Silva observed Smith and another man engaging in what appeared to be a hand-to-hand drug transaction. The four officers exited the vehicle and announced they were the police. Smith fled and entered a nearby residence. Running after Smith, Detectives Taylor and Silva followed him inside the residence. Detective

---

[2]The facts are recited verbatim from the Third Circuit's opinion on direct appeal, *United States v. Smith*, 282 F. App'x 143 (3d Cir. 2008).

1

Taylor heard the residents of the house screaming and yelling and saw Smith exit the rear of the residence by breaking through a closed screen door onto a deck overlooking the backyard. When Detective Taylor arrived on the deck, he observed Smith climb over a fence and run north.

Although Detective Taylor lost sight of Smith briefly as Smith continued to run north, he remained on the back deck and radioed Smith's movements to Detectives Leary and Pfaff. In response, Detective Leary ran to cut off any escape routes Smith might take and witnessed Smith run between two houses and stop near the porch of another. Detective Leary made eye contact with Smith and saw Smith discard into an open trash can a black glove, which was later found to contain a loaded firearm.

Between one and three minutes after Smith discarded the weapon, Detective Leary saw Smith emerge from the front of an alleyway. After being ordered to stop, Smith was immediately arrested by Detective Leary. Upon his arrest, a search of Smith's person uncovered a small digital scale with white powder residue on it and a razor knife. Then, Detective Leary conducted a "grid search," tracing the areas where Smith fled in order to look for additional evidence. At the rear of the alleyway, Detective Leary found a clear plastic bag on the ground which was later confirmed to contain 10.34 net grams of crack cocaine. At the police station, officers found in Smith's pockets several small pieces of an off-white chunky substance believed to be crack cocaine, $135 in bills, and three cellular phones. The officers sent the small pieces of off-white chunky substance to be chemically tested, but the amount of the substance was too small for testing to be completed.

On February 12, 2004, Smith was indicted on one count of possession with intent to distribute more than five grams of a substance containing a detectible amount of cocaine base, in

2

violation of 21 U.S.C. § 841(a)(1) & (b)(1)(B) (Count I); one count of carrying a firearm during and in relation to a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1) (Count II); and one count of possession of a firearm by a felon, in violation of 18 U.S.C. § 922(g)(1) (Count III). (D.I. 157 at 8)

Smith filed a motion to suppress evidence, which Judge Jordan denied after a hearing. *Id.* In July 2006, the government filed a motion *in limine*, seeking to introduce evidence which would demonstrate that Smith was involved as a seller in a hand-to-hand drug transaction prior to his arrest. (D.I. 52) The motion *in limine* was granted on August 15, 2006. (D.I. 63)

Following a two-day trial in August 2006, a jury found Smith guilty on all three counts. He was sentenced to concurrent terms of 360 months of imprisonment and 60 months of supervised release on Counts I and III, a consecutive term of 300 months imprisonment and 60 months supervised release on Count II, and a special assessment. (D.I. 109)

The Court of Appeals for the Third Circuit affirmed Smith's convictions and sentences. *See United States v. Smith*, 282 F. App'x 143 (3d Cir. 2008). Smith filed a petition for a writ of certiorari, which the United States Supreme Court denied. *See Smith v. United States*, 129 S.Ct. 278 (2008).

Smith timely filed a § 2255 motion in July 2009 (D.I. 132), and an amended § 2255 motion in October 2009. (D.I. 148) The government filed a response in opposition, to which Smith filed a reply.[3] (D.I. 159; D.I. 167)

---

[3]Smith actually filed two replies (D.I. 159; D.I. 162), and then a motion for permission to replace those replies with a new reply (D.I. 167). Having granted Smith's request for "replacement" (D.I. 173), the court will only consider the amended ("replacement") reply (D.I. 167) in its review of this proceeding.

3

## III. DISCUSSION

Smith was represented by two different attorneys during his criminal proceeding. Assistant Federal Defender Elena Kousoulis represented him until March 16, 2006, five days before trial was scheduled to commence on March 21, 2006. On March 16, 2006, due to irreconcilable differences between Smith and Ms. Kousoulis, Judge Jordan appointed Raymond Radulski to represent Smith. The trial was re-scheduled for August, 2006, and Mr. Radulski represented Smith through the remainder of his criminal proceeding and on direct appeal.

In the instant § 2255 motion, Smith asserts that these two attorneys provided ineffective assistance in the following ways: (1) Ms. Kousoulis failed to conduct a reasonable investigation prior to the suppression hearing, and she failed to interview and call material witnesses for that hearing ; (2) both attorneys were suffering from a conflict of interest with Smith, which ultimately resulted in the denial of his right to plead guilty; (3) Mr. Radulski failed to preserve Smith's right to raise a speedy trial issue and failed to assert a speedy trial claim on direct appeal; (4) Mr. Radulski failed to conduct a reasonable investigation prior to trial, failed to call exculpatory witnesses during trial, and failed to introduce exculpatory evidence; (5) Mr. Radulski should have objected to the admission of impermissible expert testimony and hearsay evidence, as well as the prosecutorial misconduct that occurred during closing arguments, as violating Smith's rights under the confrontation clause; (6) Mr. Radulski should have requested a cautionary instruction regarding the fact that Smith wore identifiable prison security markings during the first day of his trial; (7) Mr. Radulski caused Smith to involuntarily enter into two stipulations, because those stipulations relieved the government's obligation to satisfy its burden of proof; and (8) on direct appeal and during sentencing, Mr. Radulski failed to challenge the

4

constitutionality of the prior conviction from the Eastern District of Pennsylvania that was used to enhance Smith's sentence.

Smith has properly raised his ineffective assistance of counsel claims in a § 2255 motion. *See Massaro v. United States,* 538 U.S. 500 (2003). In order to prevail on these claims, Smith must satisfy the two-pronged standard articulated in *Strickland v. Washington,* 466 U.S. 668 (1984). Under the first *Strickland* prong, Smith must demonstrate that "counsel's representation fell below an objective standard of reasonableness," with reasonableness being judged under professional norms prevailing at the time counsel rendered assistance. *Strickland,* 466 U.S. at 688. Under the second *Strickland* prong, Smith must demonstrate a reasonable probability that, but for counsel's error, the outcome of the proceeding would have been different. *Id.* at 694; *United States v. Nahodil,* 36 F.3d 323, 326 (3d Cir. 1994). Although not insurmountable, the *Strickland* standard is highly demanding and leads to a strong presumption that counsel's representation was professionally reasonable. *Strickland,* 466 U.S. at 689.

## A. Evidentiary Hearing

A district court is not required to hold an evidentiary hearing on a motion filed pursuant to 28 U.S.C. § 2255 if the "motion and the files and records of the case conclusively show" that the movant is not entitled to relief. 28 U.S.C. § 2255; *see also United States v. Booth,* 432 F.3d 542, 545-46 (3d Cir. 2005); *United States v. McCoy,* 410 F.3d 124, 131 (3d Cir. 2005); Rule 8(a), 28 U.S.C. foll. § 2255. The record conclusively demonstrates that Smith is not entitled to relief for claim one, the portion of claim two alleging ineffective assistance on the part of Ms. Kousoulis, and claims three through nine. Therefore, the court concludes that an evidentiary hearing is not warranted for those claims.

5

However, as demonstrated below, the record does not "conclusively show" that Smith is not entitled to relief for the portion of claim two involving Mr. Radulski's alleged failure to communicate the government's formal plea offer. Thus, the court will hold an evidentiary hearing to further develop the facts and resolve whether trial counsel's alleged failure to communicate the government's plea offer amounted to constitutionally ineffective assistance of counsel.

## B. Claim One: Failure To Call Witnesses At Suppression Hearing

During Smith's trial, Detective Taylor testified that he witnessed Smith engaging in a suspected hand-to-hand drug transaction prior to his fleeing from police. Smith, however, contends that he was not engaging in a transaction with a man at all; instead, he was merely accepting money being returned to him by a woman named Charlene Hopkins. More specifically, Smith explains how he had planned to spend the night at Ms. Hopkins' house, and he had given her some money to buy him a beverage from a liquor store. After finding the liquor store closed, Ms. Hopkins returned to neighborhood, found Smith standing outside her house, and handed Smith his money. Smith implies that this exchange was the interaction witnessed by police.

Moreover, according to Smith, Ms. Hopkins and a man named "Naj" would have testified about this "non-drug related monetary interaction" at the suppression hearing. Smith believes this testimony would have exonerated him of the allegations that he engaged in a hand-to-hand drug transaction and would have led to the suppression of the later-discovered drug evidence. Therefore, in claim one, Smith alleges that Ms. Kousoulis rendered ineffective assistance during the suppression hearing by not calling Ms. Hopkins and Naj to testify that the interaction Smith

6

engaged in on the night of his arrest was the non-drug related monetary exchange he had with Ms. Hopkins, not the drug-related interaction witnessed by police.

Smith further asserts that Ms. Hopkins provided Ms. Kousoulis with an affidavit explaining the details of her monetary transaction with Smith on the night of his arrest, as well as explaining that Ms. Hopkins gave Smith permission to stay in her residence the night of his arrest. Smith alleges that Ms. Kousoulis' refusal to introduce Ms. Hopkins' affidavit during the suppression hearing amounted to ineffective assistance.

To support this contention, Smith has filed a new and more detailed affidavit from Ms. Hopkins in this proceeding, which includes the following information: (1) additional details of the non-drug monetary exchange between Ms. Hopkins and Smith that occurred the night of Smith's arrest; (2) a description of how Ms. Hopkins saw Naj standing in front of a house three doors down from her house on the night of Smith's arrest; (3) a description of how Ms. Hopkins observed Smith "hurrying back" into her home while she was driving away in her car after returning Smith's money; (4) a description of how, the day after Smith's arrest, Naj informed Ms. Hopkins that the police had initially stopped him, but then turned their attention to Smith when they noticed Smith entering Ms. Hopkins' house; and (5) how the police officers then kicked down the front door and followed Smith inside. The affidavit also asserts that, although Ms. Hopkins informed Ms. Kousoulis she would be willing to testify on Smith's behalf at trial, Mr. Radulski never contacted her about doing so.

In response, Ms. Kousoulis explains that she interviewed Ms. Hopkins, who stated that she had already left the area by the time the police officers arrived on the scene and arrested Smith. Given the fact that Ms. Hopkins was not present when the police witnessed the hand-to-

7

hand drug interaction, Ms. Kousoulis concluded that Ms. Hopkins' testimony could not be used to dispute Smith's involvement in that drug transaction.

"Witness selection is entrusted to counsel's sound judgment, not to the defendant," and an attorney's reasonable strategic decision on which witnesses to call must be accorded high deference. *Manchas v. Superintendent of SCI Huntington*, 428 F. App'x 184, 190 (3d Cir. 2011). Although both of Ms. Hopkins' affidavits describe her non-drug related monetary interaction with Smith on the night of his arrest, neither of the affidavits assert that the police were present during her interaction with Smith. Moreover, Ms. Hopkins told Ms. Kousoulis that Smith was alone and standing out in the street when she left him. Given these circumstances, it was reasonable for Ms. Kousoulis to conclude that she could not call Ms. Hopkins as a witness to dispute the police officers' description of the interaction between Smith and another male. Therefore, Ms. Kousoulis' decision not to call Ms. Hopkins as a witness fell within the wide range of reasonable professional assistance contemplated by the first prong of the *Strickland* test.

As for Ms. Kousoulis' failure to introduce Ms. Hopkins' affidavit during the suppression hearing, counsel explains that Smith wanted the affidavit introduced to demonstrate the he had a right to be at Ms. Hopkins' house at the time he was arrested in order to establish his expectation of privacy. Ms. Kousoulis, however, did not see a need to introduce the affidavit, because counsel's investigator testified that Ms. Hopkins had informed him that Smith was a guest at her house that night. This decision also fell within the bounds of reasonable assistance.

The court also concludes that Smith's allegation regarding Ms. Kousoulis' failure to call Ms. Hopkins as a witness or introduce her affidavit during the suppression hearing does not satisfy the prejudice prong of the *Strickland* test. Judge Jordan provided the following three

8

reasons for denying Smith's motion to suppress. First, as a factual matter, Smith did not have standing to challenge the officers' warrantless entry into Ms. Hopkins' home and the admissibility of the evidence gathered after the police chase through the residence, because he was not an overnight guest at Ms. Hopkins' house; rather, he merely fled through the house because it was faster than fleeing around it. Second, even if Smith did have standing to contest the officers' warrantless entry, the gun and drug evidence at issue was not "fruit of the poisonous tree," because it was not retrieved from the residence. And finally, regardless of the first two issues, the entry itself was lawful because the police had probable cause to arrest Smith by the time they entered the residence and their subsequent warrantless entry into the residence was justified by exigent circumstances. In summary, even if the facts asserted by Smith are presumed to be true, and even if the facts raised by Smith in this § 2255 motion would have changed Judge Jordan's determination that Smith did not have standing to challenge the officers' warrantless entry, Smith still would have lost the suppression motion on the last two grounds. Consequently, Smith cannot demonstrate a reasonable probability that the result of his proceeding would have been different if Ms. Hopkins had testified or if her affidavit had been introduced during the suppression hearing.

As for Smith's contention regarding Ms. Kousoulis' failure to call Naj as a witness during the suppression hearing, Smith overlooks the fact that Ms. Kousoulis and her investigator tried to locate Naj without success. Additionally, Smith cannot demonstrate a reasonable probability that the result of his criminal trial would have been different but for Ms. Kousoulis' failure to call Naj as a witness, because he has not provided any proof that Naj was willing to testify or that any potential testimony from Naj would have concerned either the transaction witnessed by the police

9

or Smith's alleged non-drug related transaction with Ms. Hopkins. *See Lewis v. Horn*, 581 F.3d 92, 108 (3d Cir. 2009).

Accordingly, the court will deny claim one for failing to satisfy either prong of the *Strickland* standard.

## C. Claim Two: Failure To Communicate Plea Offer

Smith asserts that Ms. Kousoulis informed him early in the case that the government had verbally offered him the ability to plead guilty to a violation of 18 U.S.C. § 924(c)(Count II), which, given Smith's criminal history, carried with it a twenty-five year mandatory minimum sentence. Smith states that he asked Ms. Kousoulis to make a "counter offer" that he would plead guilty to a violation of 18 U.S.C. § 922(g) (Count III) instead. According to Smith, Ms. Kousoulis (and later, Mr. Radulski) never contacted him or the government about the status of his counter-proposal.

Interestingly, Smith's amended reply asserts a slightly different complaint about counsels' performance. Specifically, he contends that both attorneys failed to communicate the formal plea offer extended by the government, not that they failed to keep him informed as to the status of his counter-offer. In these circumstances, the court will exercise prudence and view claim two as asserting that: both Ms. Kousoulis and Mr. Radulski provided ineffective assistance by failing to check on the status of Smith's counter-offer to the government; both attorneys provided ineffective assistance by failing to communicate the government's formal plea offer to him; and Mr. Radulski was ineffective for failing to advise him of the option to enter an "open guilty plea" to all counts of the indictment.

10

As an initial matter, the court will deny as meritless Smith's complaint regarding Ms. Kousoulis' performance. Even though Smith and Ms. Kousoulis have provided conflicting accounts about the existence of any plea negotiations,[4] the fact that Smith himself asserts that Ms. Kousoulis informed him of the government's alleged initial verbal offer to dismiss Counts I and III in exchange for Smith's entering a guilty plea to Count II defeats his contention that Ms. Kousoulis never communicated **any** plea offers to him during her representation. In turn, to the extent Smith complains that Ms. Kousoulis failed to communicate "his desire to plead guilty" to the government, the contention is frivolous, as demonstrated by his own assertion that Ms. Kousoulis communicated the counter-offer but failed to check up on the status of that counter-offer. And finally, to the extent Smith's complaint about Ms. Kousoulis includes her failure to communicate the government's formal plea offer, the government did not extend that alleged formal plea offer until April 11, 2006, approximately twenty-five days **after** Ms. Kousoulis' withdrawal from Smith's case. Ms. Kousoulis cannot be found ineffective for failing to communicate a formal plea offer about which she had no knowledge. Accordingly, the court concludes that Smith's allegations about Ms. Kousoulis' actions do not warrant relief.

Smith also contends that Mr. Radulski provided ineffective assistance by failing to inform him of the option to enter into an open guilty plea. Neither the government nor Mr. Radulski address this contention. Nevertheless, any alleged prejudice suffered by Smith is "far too speculative" to warrant relief. *See United States v. Gonzalez-Rivera*, 217 F. App'x 166, 170 (3d Cir. 2007). For instance, Smith does not assert that he would have accepted an open plea, only

---

[4]Ms. Kousoulis asserts that she does not "recall any specific offers extended by the Assistance United States Attorney," but that she would have relayed any offers made by the government to Smith. (D.I. 157-1)

11

that counsel was ineffective for failing to inform him of the option to enter an open plea. And significantly, as noted by Judge Jordan during sentencing, Smith demonstrated his unwillingness to accept responsibility for his actions when he expressed his belief that he was on trial "because police officers lied in front of the Grand Jury, because [police officers] unlawfully followed [him] into a residence when [he was] fleeing from them, [and] because [Judge Jordan was] biased against [him] and want[ed] to see [him] convicted." (D.I. 110 at 51-52) This record does not clearly show that Smith would have been entitled to an additional decrease for accepting his responsibility in spite of his continued claims of innocence. *See United States v. Bennett*, 161 F.3d 171, 196 (3d Cir. 1998)(defendant bears the burden of proving he is entitled to a downward adjustment under the Sentencing Guidelines for acceptance of responsibility, and the district court's determination is not limited solely to whether the defendant entered a guilty plea). Accordingly, the court concludes that Smith's complaint about Mr. Radulski's alleged failure to inform him about the option to enter into an open plea does not warrant relief.

Unfortunately, the record before the court does not provide enough information to determine if Smith's complaint about Mr. Radulski's failure to communicate the government's formal plea offer warrants relief. Notably, in the recent twin decisions of *Lafler v. Cooper*, ___ U.S. ___, 132 S.Ct. 1376 (2012) and *Missouri v. Frye*, ___ U.S. ___, 132 S.Ct. 1399 (2012), the United States Supreme Court explicitly held that the right to effective assistance of counsel extends to plea negotiations and situations where plea offers are rejected or allowed to lapse as a result of counsel's actions. In *Frye*, the defendant claimed that his attorney provided ineffective assistance by not informing him of a plea offer and the plea offer expired. *Frye*, 132 S.Ct. at 1404. Frye later pled guilty without a plea agreement and was sentenced to a term of

12

imprisonment longer than the sentence provided for in the uncommunicated plea offer. *Id*. After applying *Strickland*'s two-pronged test, the Supreme Court found, as a general rule, that "defense counsel has the duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused." *Id*. at 1408. Consequently, defense counsel does not "render the effective assistance the Constitution requires" by allowing "the [formal] offer to expire without advising the defendant or allowing him to consider it." *Id*. With respect to *Strickland*'s second prong, the *Frye* Court explained that a defendant shows "prejudice from ineffective assistance of counsel where a plea offer has lapsed or been rejected because of counsel's deficient performance" by demonstrating three factors: (1) a reasonable probability that he "would have accepted the earlier plea offer had [he] been afforded effective assistance of counsel"; (2) a reasonable probability that the prosecution would not have withdrawn the offer; and (3) a reasonable probability the trial court would not have refused to accept the plea agreement. *Id*. at 1409-10. The Supreme Court then remanded the case for a finding as to whether Frye could show that, if he accepted the earlier plea offer, "it would have been adhered to by the prosecution and accepted by the trial court." *Id*. at 1411.

In *Lafler*, the Court applied *Strickland* to the defendant's claim that he rejected a plea offer based upon incorrect advice he had received from counsel, and he was later convicted at trial. Because the government conceded that counsel was deficient, the Court proceeded directly to the prejudice prong of the *Strickland* test and applied the three-part inquiry outlined in *Frye*.[5] The *Lafler* Court held that the defendant had established ineffective assistance of counsel, but

---

[5]Before engaging in the prejudice analysis, the Court rejected the government's argument that a subsequent fair trial neutralized any prejudice caused by prior ineffective assistance. *Id*. at 1388.

13

explained that the correct remedy in such circumstances is, in effect, a sentencing remedy, not a remedy focused on the underlying conviction. Specifically, the *Lafler* Court stated that

[t]he correct remedy in these circumstances []is to order the State to reoffer the plea agreement. Presuming respondent accepts the offer, the state trial court can then exercise its discretion in determining whether to vacate the convictions and resentence respondent pursuant to the plea agreement, to vacate only some of the convictions and resentence respondent accordingly, or to leave the convictions and sentence from trial undisturbed.

*Id.* at 1392.

In this case, Smith and Mr. Radulski have presented conflicting accounts as to whether any plea negotiations occurred during Mr. Radulski's representation, as well as conflicting accounts as to whether the government extended any formal plea offers to the defense. Significantly, however, the government has submitted a copy of a formal plea agreement along with an accompanying letter addressed to Mr. Radulski and dated April 11, 2006, creating a strong possibility that a formal plea offer was, in fact, communicated to Mr. Radulski prior to trial.[6] This record fails to conclusively show that Smith is not entitled to relief. *See* 28 U.S.C. § 2255(b). Accordingly, the court concludes that an evidentiary hearing on this portion of claim two is warranted.[7]

---

[6] The court recognizes the possibility that Mr. Radulski may never have received the government's letter and formal plea offer.

[7] Two other factors weigh in favor of holding an evidentiary hearing on the instant issue. First, the significant disparity between the sentence under the formal plea agreement (twenty-five years on Count II, with the dismissal of Counts I and III) and the actual sentence imposed (thirty years total for Counts I and III, and twenty-five years for Count II) creates the possibility that Smith may have accepted the plea offer despite his protestations of innocence in order to obtain a lesser sentence. *See, e.g., Raysor v. United States*, 647 F.3d 491, 495 (2d Cir. 2011)(a significant sentence disparity between the sentence imposed and sentence under a proposed plea may warrant an evidentiary hearing in cases where the petitioner asserts that he would have accepted the plea offer but for counsel's improper advice or failure to communicate a plea offer); *Pham v. United States*, 317 F.3d 178, 182-83 (2d Cir. 2003)(holding that a finder of fact may infer that

14

### D. Claim Three: Failure To Assert Speedy Trial Act Violation

In claim three, Smith contends that Mr. Radulski provided ineffective assistance by failing to "raise, assist, litigate, or preserve a speedy trial issue." (D.I. 149 at 15) The government contends that the court should summarily deny this claim because Smith has not provided any specific allegations, only vague and conclusory statements. (D.I. 157 at 19) The court concurs with the government's argument, especially given the fact that none of Smith's three replies to the government's answer provide further information or clarity regarding Smith's speedy trial complaint. (D.I. 159; D.I. 162; D.I. 167) Accordingly, the court will deny claim three without further investigation because Smith has only provided vague and conclusory allegations. *See United States v. Thomas*, 221 F.3d 430, 437 (3d Cir. 2000); *United States v. Frazier*, 2004 WL 825301, at *3 (D. Del. Apr. 7, 2004).

### E. Claim Four: Failure To Take Certain Actions Regarding Evidence

Smith's fourth claim asserts that Mr. Radulski provided ineffective assistance by failing to: (1) contact Ms. Hopkins and call her as a witness during trial; (2) make any effort to locate Naj or call him as a witness; (3) contact or interview individuals who were present in the house that Smith ran through on the night of the arrest; and (4) investigate "pertinent" information that purportedly would have demonstrated that the digital scale found on Smith's person at the time

---

defendants who profess their innocence will still consider a plea when the disparity in potential sentences is great). And second, *Frye* and *Lafler* were decided after Smith's filing of his initial § 2255 motion, and have imposed a new burden on a movant to show a reasonable probability that the prosecution would not have withdrawn the plea offer and that the court would have accepted its terms.

of his arrest was related to his fitness training regimen rather than evidence of drug possession. None of these allegations are availing.

## 1. Performance prong of *Strickland*

### a. Failure to contact Ms. Hopkins

Mr. Radulski's affidavit asserts that he called Ms. Hopkins twice and left her a voice mail message prior to trial, but that she did not respond. In addition, the process serving company hired by Mr. Radulski to serve a trial subpoena on Ms. Hopkins was unable to locate her after two failed attempts at service. Notably, Smith presents no evidence to rebut Mr. Radulski's statement regarding the efforts he made to contact Ms. Hopkins, other than the bald assertion that "Mr. Radulski never spoke to Ms. Hopkins and never sent an investigator to look for her." And, although Ms. Hopkins' affidavit asserts that Mr. Radulski did not "contact, or speak with" her at any point, her affidavit does not address whether Mr. Radulski **tried** to contact her or left voice mail messages. Given these circumstances, Smith cannot demonstrate that Mr. Radulski's failure to contact Ms. Hopkins fell below an objective standard of reasonableness.

In turn, Smith cannot demonstrate a reasonable probability that the result of the proceeding would have been different if Ms. Hopkins had testified. As previously explained, Ms. Hopkins' testimony would not have contradicted the officers' testimony that they observed Smith engage in a hand-to-hand drug interaction, because she left Smith before the police arrived. In other words, Ms. Hopkins had no knowledge about the what the police did or did not see. Accordingly, the court will deny this portion of claim four.

16

### b. Failure to locate other individuals in house

As for Mr. Radulski's failure to locate the individuals who were in Ms. Hopkins' home on the night of Smith's arrest, it is unclear how he would have located those individuals when he was unable to locate Ms. Hopkins herself. Moreover, nothing in the record indicates that these individuals witnessed any aspect of the circumstances of Smith's arrest, except, perhaps, Smith's brief flight through the house. For these reasons, Mr. Radulski's failure to contact the individuals did not fall below an objective standard of reasonableness.

### c. Failure to locate and call Naj as a witness

As for Mr. Radulski's failure to call Naj as a witness, Mr. Radulski contends that Smith never mentioned Naj to him. Moreover, even if Smith did mention Naj, there is no evidence that Naj's testimony would have been helpful to Smith's case; significantly, there is no affidavit from Naj describing the content of his proposed testimony, or even stating that he would have testified on Smith's behalf. And, although Ms. Hopkins' affidavit describes how Naj was outside and just three doors down during her conversation with Smith, and how Naj told her the police initially stopped him upon exiting their car, Ms. Hopkins' affidavit does not assert that Naj had any knowledge relevant to Smith's arrest or disputing the police officers' version of the events they witnessed. Thus, Mr. Radulski did not perform deficiently by not locating a witness whose testimony had no, or little, value to the case.

### d. Failure to argue that Smith possessed the digital scale for fitness purposes

Finally, Mr. Radulski's failure to argue that the scale found on Smith's person was related to his penchant for fitness did not amount to deficient performance. The scale had traces of

17

cocaine, and nothing in the record links the scale to fitness purposes or supports Smith's

contention that he used the scale for fitness purposes. For these reasons, the court concludes that

Mr. Radulski did not provide ineffective assistance by failing to argue that Smith used the scale

found on his person for fitness purposes rather than for drugs.

## 2. Prejudice prong of *Strickland*

On direct appeal, the Third Circuit held that the evidence listed below was sufficient to

establish that Smith possessed the crack cocaine at issue:

(1) Detectives Taylor and Silva's expert testimony that the manner of the hand-to-hand
transaction involving Smith was consistent with a drug transaction; (2) the location of the
transaction was in an area known for a large of amount of drug sales; (3) Detective
Taylor's expert testimony that the items found on Smith's person were those that are
typically used in the business of selling crack cocaine; (4) the desperate nature of Smith's
flight from the officers into a home in which the occupants stated [to Detective Pfaff that]
they did not know Smith; (5) Detective Taylor's expert testimony regarding the profit
potential from the sale of 10.34 grams of crack cocaine; (6) Detectives Taylor and Leary's
testimony that, after they began to pursue Smith, they saw no other non-law enforcement
personnel in the area near where the drugs were found; and (7) Detective Leary's
testimony that Smith had to have passed by the exact spot where the drugs were found
just seconds before his arrest.

*Smith*, 282 F. App'x at 147. Given the extent of this evidence and the Third Circuit's

determination it was sufficient to support Smith's convictions, Smith cannot demonstrate a

reasonable probability that the outcome of his proceeding would have been different but for Mr.

Radulski's failure to call Ms. Hopkins, Naj, and the individuals in the house as witnesses and his

failure to argue that the scale was used for fitness purposes. Accordingly, the court will deny

claim four.

### F. Claim Five: Failure To Assert Various Objections During Trial

In his fifth claim, Smith contends that Mr. Radulski provided ineffective assistance by:
(1) failing to object to Detective Taylor's direct testimony regarding the general indicia of drug-dealing activity; (2) failing to object to an aspect of the government's closing argument relating to Smith's possession of the drugs at issue; (3) failing to object to an aspect of Detective Taylor's expert testimony regarding the officer's experience in drug investigations; (4) failing to object to a portion of the government's closing argument relating to why the officers chased Smith on the night of the arrest; (5) failing to object to a portion of Detective Taylor's expert testimony regarding the fact that drug dealers often utilize multiple cellular telephones; (6) failing to object to the government's closing argument reference to Detective Taylor's testimony regarding cellular telephones; and (7) failing to object when the government engaged in improper vouching during closing argument. The court will review assertions one, three, and five together, because they concern Detective Taylor's expert testimony regarding the distribution of crack cocaine.

#### 1. Failure to object to Detective Taylor's expert testimony regarding drug activity

During Smith's trial, the Detective Taylor testified about the facts concerning Smith's arrest. Detective Taylor also provided expert opinions regarding the drug selling aspect of those facts based on his years of experience participating in drug investigations. Specifically, Taylor initially described his experience and work with the Wilmington Police Department, the type of surveillance work he has done, and the typical hand-to-hand drug interactions he has witnessed. At the conclusion of this portion of Taylor's testimony, the prosecutor stated, "Now, detective, I want to take you to the evening of December 2nd, 2003, ... at about 11:15 p.m. that evening."

(D.I. 113 at A-77) Taylor then proceeded to describe the events of that night to the extent they involved Smith. At some point, the prosecutor stated, "Now, detective, based on your experience as we described, when you saw that hand-to-hand transaction occur, did you have an opinion as to what you had seen?" (D.I. 113 at A-86) Taylor responded, "I believed it was a hand-to-hand transaction that was consistent with the way drugs are purchased and sold here in the city of Wilmington." *Id.* In response to the prosecutor's request that Taylor briefly talk about the factors that led to that belief, Taylor described the area where Smith was seen engaging in the hand to hand interaction as a high drug area. Taylor also described how, during the interaction, Smith's hand was cupped in a manner consistent with individuals who peddle crack cocaine in Wilmington. *Id.* The remainder of Taylor's direct examination dealt with the facts of the incident.

Detective Leary testified, and thereafter, the government recalled Detective Taylor and questioned him about his experience as a drug investigator. (D.I. 113 at A-215) Taylor described how, in addition to his work in the Drug, Organized Crime and Vice Unit, he is an instructor at the Wilmington Police Academy and teaches new recruits on the basics of drug crimes. Taylor described his specific professional training with respect to drugs and crack cocaine, as well as his experience as an expert witness. *Id.* at A-219 to A-220. When the government asked Taylor to describe the business of selling crack cocaine, Taylor discussed the typical dosage and price of crack cocaine, the method of distribution, the mode of communication between dealers and customers, the packaging for crack cocaine, what happens in a foot pursuit, the paraphernalia typically used by drug dealers (specifically, the use of digital scales), and the possession and use of firearms by drug dealers. (D.I. 114 at B-30 through B-43)

20

In this portion of claim five, Smith contends that Mr. Radulski was ineffective for failing to object to Detective Taylor's expert testimony for three reasons: (1) Taylor's testimony improperly included fact and expert testimony about the indicia of drug dealing; (2) Taylor's testimony regarding his prior work in cases involving controlled purchases of cocaine confused the jury into thinking that the Smith was involved in a controlled purchase; and (3) Taylor improperly testified that drug dealers tend to carry multiple cellular phones.

The court begins with Smith's complaint that Mr. Radulski erred by failing to object to Detective Taylor's dual role as a fact witness and an expert regarding the general indicia of drug dealing. More specifically, Smith contends that the jury was confused as to when Detective Taylor's testimony was based on his expert opinion and when it was based on his factual recollection.

A fact witness is an individual "whose testimony consists of the recitation of facts and/or events, as opposed to an expert witness, whose testimony consists of the presentation of an opinion, a diagnosis, etc." U.S. Dep't of Justice, U.S. Att'ys Manual § 3-19.112 (1997). In principle, there is nothing objectionable about a police officer testifying as both a fact and an expert witness. *See United States v. Feliciano*, 223 F.3d 102, 121 (2d Cir. 2000); *United States v. Lopez-Medina*, 461 F.3d 724, 744 (6th Cir. 2006); *United States v. Lackey*, 164 F. App'x 205, 208 (3d. Cir. Feb. 7, 2006)(unpublished decision). Courts addressing the issue have held that such dual testimony does not deprive a defendant of a fundamentally fair trial if there is a clear demarcation between the fact and expert testimony, and the jury is adequately instructed on how to weigh the fact and expert testimony. *See Lopez-Medina*, 461 F.3d at 744; *United States v. Parra*, 402 F.3d 752, 760 (7th Cir. 2005). Moreover, pursuant to Federal Rule of Evidence 702, a

21

court may permit expert testimony if it will assist the trier of fact to understand the evidence or determine a fact in issue. And, as held by the Third Circuit, Federal Rule of Evidence 704(b) permits a police officer who was involved in a drug arrest to testify both as a fact witness to the arrest and as an expert witness with respect to factors that demonstrate whether a person possessed drugs with the intent to distribute them, so long as the officer does not specifically refer to the defendant's state of mind during the expert testimony. *See United States v. Watson*, 260 F.3d 301, 308-09 (3d Cir. 2001).

Reviewing the record in this case within the aforementioned legal framework demonstrates the baselessness of Smith's underlying contention that the jury was confused by Detective Taylor's dual testimony. Detective Taylor's expert testimony was brief and related to general indications of drug distribution, such as the quantity and packaging of drugs, the use of cell phones, and the relationship between drug distribution and possession of firearms. Significantly, Detective Taylor did not refer to Smith's state of mind during the government's direct and re-direct examination of him, and the defense was permitted to extensively cross-examine Detective Taylor as to both his expert opinion and fact testimony. In turn, Detective Taylor's testimony as to the facts relevant to Smith's case was sufficiently distinct from his expert testimony, thereby enabling the jury to distinguish Detective Taylor's fact testimony from his expert testimony. And finally, the following jury instruction adequately explained how to weigh the fact and expert testimony:

> a witness may be permitted to testify as to an opinion on those matters about which he or she has special knowledge, skill, experience and training. Such testimony is presented to you on the theory that someone who is experienced and knowledgeable in the field can assist you in understanding the evidence or in reaching an independent decision on the facts.

22

In weighing this opinion testimony, you may consider the witnesses' qualifications, their opinions, the reasons for testifying, as well as all of the other considerations that ordinarily apply when you are deciding whether or not to believe a witness's testimony. You may give the opinion testimony whatever weight, if any, you find it deserves in light of all the evidence in this case. You should not, however, accept opinion testimony merely because I allowed the witness to testify concerning his or her opinion. Nor should you substitute it for your own reason, judgment and common sense. The determination of the facts in this case rests solely with you.

(D.I. 67 at 15) In short, aside from his conclusory allegation, Smith has not demonstrated, and the record does not indicate, that the jury was confused by Detective Taylor's dual testimony. Accordingly, the court concludes that Mr. Radulski did not provide ineffective assistance by failing to object to Detective Taylor's testimony on this basis.

The court similarly rejects Smith's contention that Mr. Radulski erred in failing to object to Detective Taylor's testimony regarding his prior work in cases involving controlled purchases of cocaine on the basis that the testimony confused the jury into thinking that the police were making a controlled purchase of drugs from him. Detective Taylor's testimony regarding controlled purchases clearly referred to **Detective Taylor**'s past experiences, not Smith's experiences, and was obviously offered to establish Detective Taylor's expertise and qualification as an expert. Therefore, Mr. Radulski had not reason to object to this portion of Detective Taylor's testimony as unreasonable.

And finally, Mr. Radulski did not err by failing to object to Detective Taylor's expert testimony that drug dealers tend to carry multiple cellular phones on their person. Smith cites *United States v. McGowan*, 274 F.3d 1251, 1253-54 (9th Cir. 2001) to support his argument that expert testimony regarding a drug trafficking **organization** is impermissible when a defendant is not charged with conspiracy or if the evidence is not otherwise probative. Here, however,

23

Taylor's testimony was not about a drug trafficking organization, but rather, about the characteristics of **individuals** who distribute drugs. Thus, *McGowan* is inapposite, because it does not speak to the type of testimony offered by Taylor, nor does it state that such testimony is improper.

Moreover, pursuant to Federal Rule of Evidence 702, a court may permit expert testimony if it will assist the trier of fact to understand the evidence or determine a fact in issue. At the time of his testimony, Detective Taylor was an eight and one-half year veteran of the City of Wilmington Police Department. Almost all of those years were spent dealing with drug investigations, with five and one-half years of experience specifically spent in the Drug, Organized Crime and Vice Division. Notably, Smith was arrested with three cellular telephones on his person. When viewed in this context, Detective Taylor's testimony concerning the methods of drug trafficking operations for traffickers in Wilmington, Delaware and, specifically, a drug seller's use and possession of multiple cellular phones, was properly permitted under Rule 702. Accordingly, Mr. Radulski did not render ineffective assistance by failing to raise a meritless objection to this portion of Detective Taylor's testimony.

### 2. Failure to object to portion of prosecutor's closing argument relating to Smith's possession of the drugs

Smith also contends that the "record completely lacked evidence" to support the government's assertion during its closing argument that Smith possessed the crack cocaine and threw it to the ground in the alley where the drugs were found. However, as previously discussed, Smith's contention is rebutted by the Third Circuit's holding on direct appeal that there was "more than sufficient evidence for a jury to find beyond a reasonable doubt that Smith

24

possessed and intended to sell the crack cocaine which was found in the rear of the alleyway."
*Smith*, 282 F. App'x at 147. Therefore, the court concludes that Mr. Radulski did not render
ineffective assistance by failing to raise a meritless objection to the government's statement
during closing argument.

### 3. Failure to object to portion of the prosecutor's closing argument relating to why the officers chased Smith on the night of the arrest

During his closing argument, Mr. Radulski wondered why the police officers did not
chase the man who appeared to have purchased the drugs from Smith during the hand-to-hand
transaction. The government responded in its rebuttal argument that the officers focused on
Smith because they believed he was a drug distributor who was selling drugs in the community.
Smith contends that this statement referenced Smith's "other prior drug crimes" and amounted to
an improper reference to "prior bad acts."

This contention is unavailing. When viewed in context with the record, it is clear that the
government's reference was to the fact that the officers believed they had just seen Smith dealing
drugs in a hand-to-hand transaction, and that, by nature, a drug dealer is someone who distributes
drugs to multiple people on multiple occasions. In fact, Judge Jordan ruled that this hand-to-
hand transaction was not a prior bad act, but rather, intrinsic evidence of the crime. (D.I. 63)
Therefore, the government's reference to this evidence, and to the conclusions the officers
reasonably drew from the evidence, was not a reference to Smith's "prior bad acts."
Accordingly, Mr. Radulski's failure to object to the prosecutor's statement did not constitute
ineffective assistance.

25

### 4. Failure to object to prosecutor's closing argument reference to Detective Taylor's testimony regarding cellular telephones

Smith contends that Mr. Radulski erred by failing to challenge the relevance of the prosecutor's reference to Detective Taylor's testimony that Smith had three cellular phones on his person when he was arrested. This argument is unavailing. Given Detective Taylor's testimony that drug dealers tend to carry multiple cell phones on their person, his testimony regarding Smith's possession of three cell phones was entirely relevant to demonstrating that Smith possessed the crack cocaine at issue with the intent to distribute it (an element of the offense in Count I). As a result, there was no basis for Mr. Radulski to object to the prosecutor's reference to that testimony as irrelevant. Therefore, the court will deny the instant allegation as meritless.

### 5. Failure to object that prosecutor improperly vouched for Detective Leary's and Taylor's testimony

In closing, the prosecutor stated that Detective Leary was being "straightforward" when he told the jury that the amount of white substance found on Smith was insufficient for testing purposes. The prosecutor also asserted that Detective Taylor was being "candid" when he stated that he did not see the item that was exchanged in the hand-to-hand drug transaction. Smith contends that Mr. Radulski should have objected to these statements as improper prosecutorial vouching.

"Vouching constitutes an assurance by the prosecuting attorney of the credibility of a Government witness through personal knowledge or by other information outside of the testimony before the jury." *United States v. Walker*, 155 F.3d 180, 184 (3d Cir. 1998). A prosecutor's statements constitute vouching when (1) he or she assures the jury that the testimony

26

of a Government witness is credible; and (2) the assurance is based on either the prosecutor's personal knowledge or other information not contained in the record. *Id.* at 187. In Smith's case, the government did neither. The jury already knew that the amount of white substance found on Smith was an insufficient amount to test. The jury also knew that Detective Leary did not see the item exchanged during the hand-to-hand transaction. When viewed in this context, the prosecutor's use of the terms "straightforward" and "candid" essentially amounted to an appropriate argument that the jury could infer the truthfulness of the officers' testimony, because the officers were not afraid to tell the jury about evidence that was not helpful to the government's case. *See, e.g., United States v. Lore*, 430 F.3d 190, 212 (3d Cir. 2005)(rejecting claim that argument constituted improper vouching where "throughout the comments . . . the prosecutor referenced the corroborating evidence of record.") Thus, Mr. Radulski did not provide ineffective assistance by failing to raise a meritless objection.

Accordingly, the court concludes that claim five does not warrant relief.

## G. Claim Six: Failure To Request Jury Instruction

During the morning portion of the first day of trial, Smith was wearing a wristband issued by the correctional facility at which he was detained. Believing that the jury might recognize the wristband as evidence of his incarceration, Smith asked for the wristband to be removed during lunchtime. Although the wristband was removed, Smith contends that Mr. Radulski erred by failing to request a "curative instruction" regarding the issue.

Once again, Smith's argument is unavailing. To begin, there is nothing to suggest that any juror even noticed the wristband or, if one did, that he or she realized the significance of the wristband. As noted by Mr. Radulski in his affidavit, Smith was seated at defense counsel's

27

table during trial, which was far enough from the jurors that is unlikely that any juror noticed the wristband at all.

Moreover, Mr. Radulski explains that he did not ask for a curative instruction because he believed such an instruction would only have emphasized the fact that Smith was incarcerated, which may have prejudiced the jury against Smith. Mr. Radulski's reason for not requesting a curative instruction amounted to a reasonable strategic decision, which is entitled to substantial deference on collateral review.

And finally, when viewed in context with the previously discussed substantial evidence of Smith's guilt, Smith cannot demonstrate that he was prejudiced by Mr. Radulski's failure to request a curative instruction regarding his wearing of the prison wristband for the morning portion of the first day of trial. Accordingly, the court will deny claim six for failing to satisfy the requirements of *Strickland*.

## H. Claim Seven: Improperly Entered Stipulations Regarding Drug And Firearm Evidence

The parties entered into two stipulations prior to trial. In the first stipulation (government's Exhibit 15), the parties agreed that the government's Exhibit 1 (crack cocaine evidence) consisted of the same cocaine base weighing 10.34 grams found by Detective Leary on the night of Smith's arrest. In the second stipulation (the government's Exhibit 11), the parties agreed that the government's Exhibit 2 (the firearm in evidence) was a "firearm" under the meaning of federal law, that it was the same gun found by Detective Leary on the night of the arrest, and that the firearm had traveled in interstate and foreign commerce prior to the night of Smith's arrest.

28

Now, in claim seven, Smith contends that Mr. Radulski wrongfully permitted these two stipulations to be entered into evidence, because they were not signed and because nothing in the record demonstrates that he knowingly and voluntarily entered them. Contrary to Smith's assertion, however, both stipulations were signed by him, Mr. Radulski, and counsel for the government. Both stipulations were also entered into evidence without objection. Accordingly, the court will deny claim seven as meritless.

## I. Claim Eight: Failure To Argue On Direct Appeal That Sentencing Court Erred By Using Prior Conviction To Enhance Sentence

In 1995, Smith pled guilty in the Eastern District of Pennsylvania to violating 18 U.S.C. § 924(c) and 21 U.S.C. §841(a)(1). Consequently, Smith's Presentence Investigation Report ("PSR") in this case noted that he faced a mandatory minimum twenty-five year term of imprisonment on Count II (a violation of § 924(c)) as a result of the 1995 conviction. Smith objected to this recommendation during his sentencing hearing, and argued that his prior Pennsylvania counsel's failure to file an appeal from the 1995 conviction was "tantamount" to the total deprivation of counsel which necessitated the vacation of that conviction. Hence, he contended that the 1995 conviction in the Eastern District of Pennsylvania could not be used to fix his statutory mandatory minimum penalty for Count II at twenty-five years, or to justify the application of three criminal history points. Judge Jordan concluded that he was precluded by *Custis v. United States*, 511 U.S. 485 (1994) and its progeny from considering this argument because Smith's contention regarding the Pennsylvania counsel's failure to file an appeal, raised eleven to twelve years after the fact, did not demonstrate a complete absence of counsel. (D.I.

29

110 at 34) Now, in his final § 2255 claim, Smith contends that Mr. Radulski was ineffective for failing to raise the improper sentence enhancement argument on direct appeal.

According to well-settled Third Circuit precedent, a federal defendant is permitted to collaterally challenge the constitutional validity of past convictions during a federal sentencing proceeding in two distinct situations: (1) where the statute or sentencing guideline under which the defendant was sentenced provides for the right to bring such an attack; or (2) where the defendant's collateral attack is based on an allegation that his right to counsel was violated during the underlying proceeding (i.e., a claim under *Gideon v. Wainwright*, 373 U.S. 335 (1963)). *See United States v. Escobales*, 218 F.3d 259, 260 (3d Cir. 2000)(citing *Custis v. United States*, 511 U.S. 485 (1994)). As explicitly set forth by the Supreme Court in *Custis v. United States*, 511 U.S. 485 (1994), this second exception applies only to cases where the defendant's prior conviction was obtained in the *complete absence of counsel*, a circumstance the Supreme Court has called a "unique constitutional defect." *Id.* at 496. Relying on *Custis*, the Third Circuit has routinely found that a defendant may not challenge the validity of an earlier conviction during the sentencing hearing in a later case where the defendant acknowledges that he had counsel during the prior proceeding, but claims that his counsel failed to take certain actions. *See, e.g.*, *United States v. Leuschen*, 395 F.3d 155, 159 (3d Cir. 2005)(the Third Circuit rejected the defendant's argument that his trial counsel's failure to recognize an important legal development in prior proceeding was "tantamount to a total deprivation of the right to counsel" under the meaning of *Custis*, and permitted the use of a resulting conviction in an instant prosecution for violation of 18 U.S.C. § 922(g)(1)).

Judge Jordan rejected Smith's argument as foreclosed by *Custis* and its progeny. Smith's unsupported and conclusory assertion that his Pennsylvania counsel's failure to appeal his 1995 conviction amounted to a "total deprivation of the right to counsel" as contemplated by *Cronic*, *Custis*, or *Gideon* does not rebut Judge Jordan's conclusion that he was not authorized to reevaluate the events that occurred in the Eastern District of Pennsylvania **eleven or twelve years earlier** because Smith's allegations failed to establish the threshold "total absence of counsel" requirement. Indeed, as noted by the Supreme Court, if "a prior conviction used to enhance a federal sentence is no longer open to direct or collateral attack in its own right because the defendant failed to pursue those remedies while they were available (or the defendant did so unsuccessfully), then that defendant is without recourse. The presumption of validity that attached to the prior conviction at the time of sentencing is conclusive, and the defendant may not collaterally attack his prior conviction through a motion under § 2255. A defendant may challenge a prior conviction as the product of a *Gideon* violation in a § 2255 motion, but generally only if he raised that claim in his federal sentencing proceeding." *Daniels v. United States*, 532 U.S. 374, 382 (2001). While Smith may argue that this precedent does not preclude his instant argument because his Pennsylvania counsel was responsible for not filing an appeal from his 1995 conviction, he is mistaken. Notably, Smith does not allege that he was prevented from pursuing his claim in a § 2255 motion filed in the Eastern District of Pennslyvania. Consequently, by the time Smith was sentenced here in 2007, the 1995 conviction and sentence was presumptively valid because it was no longer open to direct or collateral attack in its own right in the Eastern District of Pennsylvania. In short, Mr. Radulski did not provide ineffective

31

assistance by failing to raise this meritless sentence enhancement argument on direct appeal. *See United States v. Mannino*, 212 F.3d 835, 840 (3d Cir. 2000).

The court cannot end this discussion without acknowledging that Smith filed a document titled "second 2255 motion" during the pendency of this proceeding. This "second 2255 motion" asserts that, after Smith filed his original § 2255 motion here, the New York Supreme Court issued a decision in 2010 invalidating his 1995 conviction in the Eastern District of Pennsylvania. (D.I. 170) According to Smith, this "newly discovered evidence" demonstrates the unconstitutionality of his sentence enhancement in this case and that Mr. Radulski's failure to raise the issue constituted ineffective assistance.

Given the timing of the "second 2255 motion's" filing and the "newly discovered evidence" allegation raised therein, the court views Smith's "second 2255 motion" as a motion to either add a new claim to his original § 2255 motion, or a motion to supplement claim eight with "newly discovered evidence." To the extent Smith is attempting to add an entirely new substantive claim that the New York Supreme Court's July 12, 2010 decision somehow invalidates his sentence enhancement, rather than an argument that the New York decision provides support for his ineffective assistance of counsel claim, the amendment is denied as untimely. *See* Fed. R. Civ. P. 15(a),(c); *Mayle v. Felix*, 545 U.S. 644 (2005); *United States v. Duffus*, 174 F.3d 333, 336-37 (3d Cir. 1999)(finding that a new ineffective assistance of counsel claim asserted in a motion to amend after AEDPA's limitations period had already expired did not relate back to an ineffective assistance of counsel claim asserted in the original timely habeas petition); *United States v. Thomas*, 221 F.3d 430, 436, 438 (3d Cir. 2000)("under Fed. R. Civ. P. 15(c), a District Court may, in its discretion, permit an amendment [after the expiration of the

32

one-year period of limitations] which clarifies or amplifies a claim or theory in a timely filed §
2255 motion," so long as the petitioner does not seek to add an entirely new claim) District
Court's discretion, relate back to the date of the petition if and only if the petition was timely
filed and the proposed amendment does not seek to add a new claim or to insert a new theory into
the case").

However, to the extent Smith is attempting to supplement his argument that Mr. Radulski
erred by failing to challenge the sentence enhancement, the supplementation is permitted, but
unavailing. Notably, the Eastern District of Pennsylvania has not vacated its 1995 decision, and
the New York Supreme Court did not hold that Smith's prior conviction or sentence in the
Eastern District of Pennsylvania was invalid or unconstitutional. Rather, the New York Supreme
Court held that the Kings County Supreme Court in New York "improperly relied on its own
investigation" of Smith's prior conviction in the Eastern District of Pennsylvania in sentencing
Smith as a second felony offender" in the New York State court. *See People v. Smith*, 871
N.Y.S.2d 159 (N.Y. App. Div. 2008). In other words, the New York Supreme Court focused on
the King County Court's improper sentencing analysis, without addressing the validity or
constitutionality of the Eastern District of Pennsylvania's decision. Because the validity of
Smith's New York conviction and/or sentence does not effect the validity or constitutionality of
his prior conviction in the Eastern District of Pennsylvania, the New York Supreme Court
decision does not provide a basis for challenging Smith's sentencing enhancement in this court.
As a result, Smith's supplemental argument fails to establish that Mr. Radulski's actions
amounted to constitutionally ineffective assistance.

Accordingly, the court will deny claim eight in its entirety.

33

## V. PENDING MOTIONS

Prior to filing the instant § 2255 motion, Smith filed a motion for reconsideration of Judge Jordan's denial of his motion to dismiss the indictment (D.I. 98) and a motion to correct his illegally imposed/enhanced sentence (D.I. 108). The issues raised in these motions mirror the issues denied in the instant § 2255 motion. Accordingly, the court will deny the two motions as moot.

Smith also filed a recent motion for leave to supplement claim two with two recent Supreme Court cases, *Lafler v. Cooper*, ___ U.S. ___, 132 S.Ct. 1376 (2012) and *Missouri v. Frye*, ___ U.S. ___, 132 S.Ct. 1399 (2012). (D.I. 181) The court will grant the motion, and notes that the aforementioned caselaw was fully considered when the court determined the need to hold an evidentiary hearing for claim two.

## VI. CERTIFICATE OF APPEALABILITY

A district court issuing a final order denying a § 2255 motion must also decide whether to issue a certificate of appealability. *See* 3d Cir. L.A.R. 22.2 (2011). A certificate of appealability is appropriate only if the movant "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The movant must "demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel,* 529 U.S. 473, 484 (2000).

As previously discussed, the court is reserving judgment on the portion of claim two alleging ineffective assistance for failure to communicate a formal plea offer. Consequently, the court will withhold determining whether or not a certificate of appealability should issue on all

34

the claims raised in Smith's § 2255 motion until it makes a final determination on that remaining claim.

## VII.   CONCLUSION

Based on the foregoing, the court concludes that Smith is not entitled to relief pursuant to 28 U.S.C. § 2255 for claim one, the portion of claim two involving Ms. Kousoulis, and claims three through eight.  The court, however, will reserve judgment on the portion of claim two involving Mr. Radulski's communication of the government's formal plea offer until it has held an evidentiary hearing.   An appropriate order will issue.

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

| IVAN SMITH, | ) |
| | ) |
| Movant/Defendant, | ) |
| | ) |
| v. | ) Civ. A. No. 09-533-GMS |
| | ) Cr. A. No. 04-11-GMS |
| | ) |
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Respondent/Plaintiff. | ) |

## ORDER

For the reasons set forth in the Memorandum Opinion issued in this action today, IT IS

HEREBY ORDERED that:

1. Movant Ivan Smith's motion for leave to supplement claim two of his § 2255 motion

(D.I. 181) is **GRANTED**.

2. Smith's motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255

(D.I. 132; D.I. 148) is **DENIED in part,** as to claim one, claim two (to the extent it asserts the

ineffective assistance of Ms. Kousoulis), and claims three through eight.

3. A ruling on the portion of claim two in Smith's § 2255 motion alleging that Mr.

Radulski provided ineffective assistance for failing to communicate the government's formal

plea offer is **RESERVED** until an **evidentiary hearing** on said claim is held on

October 11, 2012 at 9:30 a.m. in Courtroom 2A.

4. Pursuant to Rule 8(c), 28 U.S.C. foll. § 2255, and the provisions of the Criminal Justice Act, the clerk of the court is ordered to appoint counsel to represent Smith during the aforementioned evidentiary hearing.

5. Smith's motion for reconsideration of the denial of his motion to dismiss the indictment (D.I. 98) is **DENIED** as moot.

6. Smith's motion to correct the illegally imposed/enhanced sentence (D.I. 108) is **DENIED** as moot.

7. A ruling is **RESERVED** as to whether a certificate of appealability will issue for any claim or contention in this case.

_Sept 7_, 2012
Wilmington, Delaware

CHIEF UNITED STATES DISTRICT JUDGE