IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

IVAN SMITH,                          )
                                     )
            Movant/Defendant,        )
                                     )
      v.                             )        Civ. A. No. 09-533-GMS
                                     )        Cr. A. No. 04-11-GMS
                                     )
UNITED STATES OF AMERICA,            )
                                     )
            Respondent/Plaintiff.    )


**MEMORANDUM OPINION**

_____


Peter Levin, Esquire.  Attorney for movant.

Mark M. Lee, Assistant United States Attorney, United States Department of Justice,
Wilmington, Delaware.  Attorney for respondent.

_____


Sept 29 , 2014
Wilmington, Delaware

SLEET, District Judge

## I.    INTRODUCTION

Movant Ivan Smith ("Smith") filed a *pro se* motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 (D.I. 132) and an amended § 2255 motion (D.I. 148) (hereinafter collectively referred to as "§ 2255 motion."). The government filed its answer in opposition. (D.I. 157) In a memorandum opinion dated September 10, 2012, the court denied all but one of Smith's claims as meritless. (D.I. 185) The court reserved ruling on the portion of claim two alleging ineffective assistance of counsel for failure to communicate a formal plea offer after determining that the inconsistent stories necessitated an evidentiary hearing. The court held an initial evidentiary hearing on the matter on November 13, 2012, which was continued and concluded on June 27, 2013. (D.I. 190; D.I. 196) The court then permitted further briefing on the issue. Smith filed his initial brief on October 21, 2013 (D.I. 200), the government filed its brief in opposition on April 7, 2014 (D.I. 205), and Smith filed a reply on June 13, 2014 (D.I. 210). For the reasons that follow, Smith's motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 (D.I. 132; D.I. 148) is GRANTED.

## II.    BACKGROUND[2]

On December 2, 2003, at approximately 11:15 p.m., Detectives Taylor, Silva, Leary, and Pfaff of the Wilmington Police Department's Drug, Organized Crime and Vice Division, were driving in an unmarked police vehicle in a part of the city known to be a regular site of street-level drug trafficking. Detective Taylor and Detective Silva observed Smith and another man engaging in what appeared to be a hand-to-hand drug transaction. The four officers exited the

---

[2]The facts are recited verbatim from the Third Circuit's opinion on direct appeal, *United States v. Smith*, 282 F. App'x 143 (3d Cir. 2008).

vehicle and announced they were the police. Smith fled and entered a nearby residence. Running after Smith, Detectives Taylor and Silva followed him inside the residence. Detective Taylor heard the residents of the house screaming and yelling and saw Smith exit the rear of the residence by breaking through a closed screen door onto a deck overlooking the backyard. When Detective Taylor arrived on the deck, he observed Smith climb over a fence and run north.

Although Detective Taylor lost sight of Smith briefly as Smith continued to run north, he remained on the back deck and radioed Smith's movements to Detectives Leary and Pfaff. In response, Detective Leary ran to cut off any escape routes Smith might take and witnessed Smith run between two houses and stop near the porch of another. Detective Leary made eye contact with Smith and saw Smith discard into an open trash can a black glove, which was later found to contain a loaded firearm.

Between one and three minutes after Smith discarded the weapon, Detective Leary saw Smith emerge from the front of an alleyway. After being ordered to stop, Smith was immediately arrested by Detective Leary. Upon his arrest, a search of Smith's person uncovered a small digital scale with white powder residue on it and a razor knife. Then, Detective Leary conducted a "grid search," tracing the areas where Smith fled in order to look for additional evidence. At the rear of the alleyway, Detective Leary found a clear plastic bag on the ground which was later confirmed to contain 10.34 net grams of crack cocaine. At the police station, officers found in Smith's pockets several small pieces of an off-white chunky substance believed to be crack cocaine, $135 in bills, and three cellular phones. The officers sent the small pieces of off-white chunky substance to be chemically tested, but the amount of the substance was too small for testing to be completed.

On February 12, 2004, Smith was indicted on one count of possession with intent to distribute more than five grams of a substance containing a detectible amount of cocaine base, in violation of 21 U.S.C. § 841(a)(1) & (b)(1)(B) (Count I); one count of carrying a firearm during and in relation to a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1) (Count II); and one count of possession of a firearm by a felon, in violation of 18 U.S.C. § 922(g)(1) (Count III). (D.I. 157 at 8)

Smith filed a motion to suppress evidence, which Judge Jordan denied after a hearing. *Id.* In July 2006, the government filed a motion *in limine*, seeking to introduce evidence which would demonstrate that Smith was involved as a seller in a hand-to-hand drug transaction prior to his arrest. (D.I. 52) The motion *in limine* was granted on August 15, 2006. (D.I. 63)

Following a two-day trial in August 2006, a jury found Smith guilty on all three counts. He was sentenced to concurrent terms of 360 months of imprisonment and 60 months of supervised release on Counts I and III, a consecutive term of 300 months imprisonment and 60 months supervised release on Count II, and a special assessment. (D.I. 109)

The Court of Appeals for the Third Circuit affirmed Smith's convictions and sentences. *See United States v. Smith*, 282 F. App'x 143 (3d Cir. 2008). Smith filed a petition for a writ of certiorari, which the United States Supreme Court denied. *See Smith v. United States*, 129 S.Ct. 278 (2008).

Smith timely filed a § 2255 motion in July 2009 (D.I. 132), and an amended § 2255 motion in October 2009. (D.I. 148) The government filed a response in opposition, to which Smith filed a reply. (D.I. 159; D.I. 167)

After reviewing these filings, the court determined that all but a portion of claim two of the § 2255 motion should be denied without an evidentiary hearing. However, the court

3

concluded that an evidentiary hearing was required in order to properly consider the portion of claim two alleging ineffective assistance on the part of Ray Radulski, Esquire, for failing to communicate a formal plea offer to Smith. As such, in a memorandum opinion and order dated September 10, 2012, the court denied as meritless all of Smith's claims except for the portion of claim two alleging that Mr. Radulski provided ineffective assistance. (D.I. 185) The court also issued an order requesting an evidentiary hearing on the one remaining claim, and ordered that counsel be appointed to represent Smith during the proceeding. *Id.*

This court held an evidentiary hearing on November 13, 2012, at which Smith's former counsel Mr. Radulski testified, as well as three of Smith's friends and/or relatives: Jasmine Watkins, Tamika Brown, and Howard Porter. (D.I. 190) The evidentiary hearing was continued and completed on June 27, 2013, at which Smith testified, along with his former initial counsel Eleni Kousoulis. Jasmine Watkins was also recalled to testify. (D.I. 196)

Thereafter, Smith filed a brief in support of the § 2255 motion, the government filed a response, and Smith filed a reply. Briefing was completed on June 13, 2014. The case is ready for review.

## III. DISCUSSION

In the sole remaining issue presently pending before the court, Smith contends that Mr. Radulski provided ineffective assistance by failing to inform him of a formal favorable plea offer from the government.[1] In order to prevail this claim, Smith must satisfy the two-pronged standard articulated in *Strickland v. Washington*, 466 U.S. 668 (1984). Under the first *Strickland* prong, Smith must demonstrate that "counsel's representation fell below an objective standard of

---

[1]The testimony indicates that both parties concede that a formal written plea offer was transmitted to Mr. Radulski on April 11, 2006, and that Mr. Radulski's first meeting with Smith appears to have occurred on April 19, 2006.

reasonableness," with reasonableness being judged under professional norms prevailing at the time counsel rendered assistance. *Strickland*, 466 U.S. at 688. Under the second *Strickland* prong, Smith must demonstrate a reasonable probability that, but for counsel's error, the outcome of the proceeding would have been different. *Id.* at 694; *United States v. Nahodil*, 36 F.3d 323, 326 (3d Cir. 1994). Although not insurmountable, the *Strickland* standard is highly demanding and leads to a strong presumption that counsel's representation was professionally reasonable. *Strickland*, 466 U.S. at 689.

"Claims of ineffective assistance of counsel in the plea bargain context are governed by the two-part test set forth in *Strickland*." *Missouri v. Frye*, 132 S.Ct. 1399, 1405 (2012). It is now well-settled that defense counsel's failure to communicate a formal plea offer to the defendant constitutes deficient performance under *Strickland*. *Id.* at 1408. In turn, a defendant establishes prejudice from defense counsel's failure to communicate a formal plea by demonstrating: (1) a reasonable probability that he "would have accepted the earlier plea offer had [he] been afforded effective assistance of counsel"; (2) a reasonable probability that the prosecution would not have withdrawn the offer and the trial court would not have refused to accept the plea agreement; and (3) a "reasonable probability that the end result of the criminal process would have been more favorable by reason of a plea to a lesser charge or a sentence of less prison time." *Id.* at 1408-10. For the reasons that follow, the court finds that Smith has satisfied this standard.

### A. First Prong: Deficient Performance

The only evidence the government presents to support an inference that Smith was notified of the existence of the plea offer is Mr. Radulski's testimony regarding: (1) his overall practice of informing his clients about plea offers; (2) Mr. Radulski's notes from his first meeting

with Smith on April 19, 2006; and (3) Mr. Radulski's daytimer reference to a telephone

conference on August 7, 2006 with Christopher Burke, the Assistant United States Attorney

("former AUSA Burke") handling the case.

> With respect to his overall practice regarding plea offers, Mr. Radulski testified that,

> [t]o my knowledge, I have never not communicated a plea offer or a settlement offer in a civil case to a client. It's my obligation. It's one thing that the client always has the decision on, whether to plead or not or to accept an offer of some sort. It's not the attorney's decision.

(D.I. 190 at 15) With respect to his first meeting with Smith in April 2006, Mr. Radulski

testified that,

> I prepared notes in connection with this [] [and] there is no reference in the notes to a plea. [] And it was within a week or so of receiving that [plea] offer that I went to see Mr. Smith.

> So my belief would be I had to have discussed that [plea], although I don't have any specific recollection. I had to have discussed the plea offer to basically, you know, get that out of the way if Mr. Smith was intending on proceeding to trial. And, in fact, the notes I prepared that day reflect a discussion about the facts of the case as opposed to anything else.

(D.I. 190 at 16-17) In response to the government's question as to whether he had a recollection

of discussing making a counteroffer to an alleged earlier verbal plea offer that had been

communicated to Ms. Kousoulis before she withdrew from the case, Mr. Radulski responded,

> No. I looked through my files. I could not find any correspondence of any kind or any notes indicating an interest in a plea by [Smith].

> *       *       *       *

> If he had [expressed an interest in a plea] I would have immediately --- there would be some note of it, and I would have gone to the prosecutor and said, Look, he is interested in pleading. What can you do for him?

(D.I. 190 at 20) Finally, with respect to the reference in his daytimer, Mr. Radulski testified that,

6

I did find one note from August 7th, which would have been relatively shortly before trial. That reflects a teleconference with Chris Burke [the Assistant US Attorney handling the case]. And we talked about jury instructions, *voir dire*, and plea. By that I would anticipate that it would have been indicated that there was not going to be a plea made in the matter. But again, I don't have any independent recollection. I am just – that's what the note says to me.

*       *       *       *

The only significance [about the daytimer entry] is that we probably talked about jury instructions and *voir dire*, whatever we would have liked to have, defense would have liked to have had included in those. I have the word "plea" down there. I would anticipate that I must have been communicating with Mr. Burke about the offer that had been sent over, that basically, look, that plea is not going to happen.

*       *       *       *

It would not have been a new plea offer, if I just wrote "plea" down there and nothing further. It undoubtedly related to the plea that at least I received on April 11.

(D.I. 190 at 17-20)

These excerpts from the evidentiary hearing demonstrate that Mr. Radulski did not

affirmatively remember receiving the April 11, 2006 plea offer from former AUSA Burke, he did

not affirmatively remember communicating or discussing the April 11, 2006 plea offer to Smith,

and he did not definitively recall discussing a plea offer with former AUSA Burke on August 7,

2006. Mr. Radulski's one word notation to "plea" in his daytimer hardly constitutes objective

and descriptive proof that the conversation included a discussion about the April 11, 2006 plea

offer.[2]

Given Mr. Radulski's stated awareness of the importance of a defendant's decision to

plead guilty, the court admits some puzzlement as to his complete failure to formally document

---

[2]At the beginning of the evidentiary hearing held in June 2013, the government informed the court that it did not intend to call former AUSA Burke as a witness. (D.I. 196 at 3) The government also has not submitted an affidavit from former AUSA Burke detailing his recollection of the events surrounding the plea offer.

Smith's wishes or conversations about the option to plead, even if to just include a brief note stating "client doesn't want to plead." Moreover, the court cannot ignore the fact that, in his April 1, 2010 affidavit responding to Smith's § 2255 motion, Mr. Radulski explicitly stated that he did not "recall the government offering a plea during [his] representation." (D.I. 157-2) Yet, sometime between September 29, 2012 and November 13, 2012, Mr. Radulski discovered a copy of the April 11, 2006 plea offer in his case file.[3] Although Mr. Radulski explained that he had not reviewed his file when he wrote the affidavit, (D.I., 190 at 8-13), the affidavit repeatedly references his file and the record. (D.I. 157-2) The court considers the internal inconsistency between Mr. Radulski's 2010 version of events and his testimony in 2012 as strongly suggesting that Mr. Radulski did not communicate the April 2006 plea offer because he was unaware of its existence, especially when viewed in conjunction with the complete lack of any definitive notation regarding the existence of the April 2006 plea offer in Mr. Radulski's files.

This conclusion is supported when viewed in context with Smith's assertions regarding what transpired when Ms. Kousoulis was representing him. According to Smith, Ms. Kousoulis informed him early in the case that the government had verbally offered him the ability to plead guilty to a violation of 18 U.S.C. § 924(c)(Count II), which, given Smith's criminal history,

---

[3]Mr. Radulski sent an email to Smith's present counsel, Mr. Levin, on September 29, 2012, a little more than one month before the evidentiary hearing. (Defense Exhibit 1) In the email, Mr. Radulski apologized for his delay in responding to Mr. Levin (he had been away), and explained that the case file had been in a "banker's box." Mr. Radulski then stated, "no offer to plea in this case was made but not communicated to Smith." *Id.* On November 13, 2012, Mr. Radulski testified that he recently found a copy of the plea offer in his file, and he did not recall if he had reviewed his file at the time of his email to Mr. Levin. However, Mr. Radulski explained that he worded his email in the manner he did because, even if a plea offer had been extended during his representation of Smith, he was confident he would have communicated it to Smith. (D.I. 190 at 39)

8

carried with it a twenty-five year mandatory minimum sentence. Smith states that he asked Ms. Kousoulis to make a "counter offer" that he would plead guilty to a violation of 18 U.S.C. § 922(g) (Count III) instead. In his initial § 2255 motion, Smith alleged that Ms. Kousoulis (and later, Mr. Radulski) provided ineffective assistance because they never contacted him or the government about the status of his counter-proposal, and never informed the government of his desire to enter a guilty plea. It was only after the government attached a copy of the formal April 11, 2006 plea offer to its answer that Smith added the additional argument at issue here, namely, that Mr. Radulski was ineffective for failing to communicate the formal written April 11, 2006 plea offer.

Smith's contentions regarding Ms. Kousoulis and the verbal plea offer are not at issue here. However, the version of events provided by Ms. Kousoulis and Smith are circumstantially relevant because they indicate what Mr. Radulski may or may not have known about the status of any early plea discussions or Smith's willingness to enter a plea. To summarize briefly, Ms. Kousoulis represented Smith until March 16, 2006, the date on which Mr. Radulski was appointed to represent Smith. On March 30, 2006, former AUSA Burke replaced former Assistant United States Attorney Ferris Wharton ("AUSA Wharton"). On April 11, 2006, former AUSA Burke sent the formal plea offer to Mr. Radulski. The terms of the April 11, 2006 formal plea offer mirror the terms of the verbal plea offer Smith contends the government extended prior to Mr. Radulksi's appearance in this case, in that the formal plea offer required him to plead guilty to count II and set forth a minimum mandatory 25 year sentence.

Ms. Kousoulis testified that she had no recollection or notes indicating that former AUSA Wharton extended any verbal plea offer, or that she contacted the government about a possible plea. (D.I. 196 at 55, 65, 71, 72, 73) Ms. Kousoulis testified that, if the government had

extended a plea offer during her representation of Smith, she would have told Mr. Radulski about that plea offer when she transitioned the case to him; however, she had no recollection of telling Mr. Radulski about a plea. (D.I. 196 at 73, 74) Ms. Kousoulis also testified that she did not have any recollection or notes indicating that she and Smith discussed taking a plea, that Smith wished to plead, or that the government had extended a verbal plea offer. (D.I. 196 at 55, 60, 65) However, Ms. Kousoulis did testify that, "back when I was practicing several years ago, the government, unless we asked, would not offer us pleas. Now it appears that in most of my cases I get a plea offer from the government early on whether or not I ask for it." (D.I. 196 at 66) On cross-examination, Ms. Kousoulis testified that "there have been times in the past and presently that I get unsolicited pleas from the government." (D.I. 196 at 67) Ms. Kousoulis did not clarify if she had ever received unsolicited pleas from the government back in 2006.

The testimony does not clearly indicate if the April 11, 2006 formal plea offer was unsolicited or the result of prior discussions that took place between Ms. Kousoulis and former AUSA Wharton, or Mr. Radulski and former AUSA Wharton, or Mr. Radulski and former AUSA Burke. However, if, indeed, no earlier plea discussion had taken place prior to Mr. Radulski's appointment, and the April 11, 2006 formal plea offer was unsolicited, it is unclear how or why Smith's original § 2255 motion would have complained about his two attorneys failing to follow up on a **verbal** plea offer that exactly mirrored the formal April 11, 2006 plea offer that was sent to Mr. Radulski. In other words, if, as the government contends, Smith had been informed about the formal April 11, 2006 offer, why did his original § 2255 motion present an ineffective assistance argument premised on his attorneys' ineffective assistance with respect to a difficult-to-prove verbal plea offer rather than a well-documented formal plea offer?

When viewed in this context, Smith's testimony at the hearing supports an inference that Mr. Radulski never informed him about the existence of the April 11, 2006 plea offer. Smith consistently and calmly testified that Mr. Radulski never informed him about the April 11, 2006 plea offer. Despite the government's repeated attempts to get Smith to say that Ms. Kousoulis informed him about the existence of a formal written plea offer prior to her withdrawal from the case and that he rejected that offer, Smith repeatedly testified that Ms. Kousalis only told him that former AUSA Wharton extended a **verbal** plea offer. (D.I. 196 at 12-14) Smith also repeatedly testified that whenever he asked Mr. Radulski about the status of said verbal plea offer, Mr. Radulski either stated there was no plea or that he was unable to reach former AUSA Burke and inquire about a plea because they were playing "phone tag." (D.I. 196 at 19-21) At one point, Smith specifically stated, "Every time he came to see me, I inquired about the plea agreement that Ms. Kousalis initially told me about, but she never showed me the plea offer. [] I asked him about [the verbal plea offer] all the way until the pretrial conference."[4] (D.I. 196 at 22) The court finds Smith's testimony credible.

Moreover, as the government asserts, Smith filed numerous *pro se* motions throughout the proceedings when things were not going his way. The government states, "[t]here was not a detail in the case that he was reluctant to make the court aware if Smith felt it suited his strategy." (D.I. 205 at 10) Pointing to Smith's pattern of voluminous filings, the government argues that Smith would have mentioned his desire to plead guilty if, indeed, he had been interested in entering a plea.

---

[4]Ms. Kousoulis was removed from Smith's case approximately twenty-seven days before the formal written plea was transmitted to Mr. Radulski. Therefore, her testimony is not relevant to determining whether Mr. Radulski communicated the April 11, 2006 plea offer to Smith.

11

Although the court agrees with the government's characterization of Smith's voluminous and vociferous filings as indicating that "Smith was actively involved in trial preparation," the court disagrees with the government's conclusion that, "[h]ad Smith been intent on taking plea, he most certainly would have brought it to the court's attention [] at some point before the date of the trial." (D.I. 205 at 11) Instead, given Smith's litigious nature, if he had known about the formal April 11, 2006 plea offer and the 25 year sentence contained therein, it is more reasonable to conclude that Smith would have found some reason to complain about counsel's failure to consummate the plea agreement, especially after Smith was sentenced to 55 years of imprisonment. Yet, the first time Smith mentions the formal April 11, 2006 plea offer and complains about Mr. Radulski's failure to communicate its existence is after the government attached a copy of the plea offer to its response to his § 2255 motion. Notably, after being convicted on all three charges, Smith's first *pro se* filing with the court was a letter to Judge Jordan dated September 13, 2006 (D.I. 87), wherein Smith complained about Mr. Radulski's pre-trial and trial performance. That letter also accused Mr. Radulski of conspiring with the government, law enforcement officials, and Judge Jordan in a plan to deprive him of his constitutional rights. Notably, this letter does not mention Mr. Radulski's failure to effectuate the April 11, 2006 plea offer, not even as part of Smith's conspiracy theory. Smith then proceeded to file five more *pro se* documents describing various complaints about the process, until he finally filed his notice of appeal. Again, none of these documents mention the formal April 11, 2006 plea offer.[5] Borrowing a phrase from the government's brief, "it strains reason to

---

[5] These *pro se* filings (and Smith's pre-trial *pro se* filings) also do not mention the verbal plea offer. However, Smith testified that he did not mention the verbal plea offer because he had been told that there was no plea offer. (D.I. 196 at 26) Specifically, he stated, "How can I

think" (D.I. 205 at 11) that Smith would have omitted from his litany of complaints Mr. Radulski's failure to successfully effectuate the formal plea offer if, in fact, Smith had known about its existence and the significantly lower sentence contained therein.

For the reasons set forth above, the court concludes that Mr. Radulski failed to inform Smith of the existence of the formal April 11, 2006 plea offer. Because this failure fell below an objective standard of reasonableness, Smith has satisfied the performance prong of the *Strickland* standard.

### B. Second Prong: Prejudice

As previously explained, in order to establish that he was prejudiced by Mr. Radulski's failure to communicate the April 11, 2006 plea offer, Smith must demonstrate: (1) a reasonable probability that he would have accepted the April 11, 2006 plea offer if Mr. Radulski had communicated the plea offer to him and effectively advised him about it; (2) a reasonable probability that the government would not have withdrawn the plea and that the court would have accepted the plea agreement; and (3) a reasonable probability that the end result of the criminal process would have been more favorable by reason of a plea to a lesser charge or a sentence of less prison time. Demonstrating a "reasonable probability" is a "relatively low standard, given that it is not necessary to even prove it is 'more likely than not' that the outcome would be different." *Boyd v. Waymart*, 579 F.3d 330, 354 (3d Cir. 2009).

#### 1. Reasonable probability that Smith would have accepted the April 11, 2006 plea offer

In the Third Circuit, a defendant can demonstrate a reasonable probability that he would have accepted the formal plea offer by: (1) testifying that he would have accepted the plea offer

---

complain about something that didn't exist? How can I complain about something that I had no knowledge of?" (D.OI. 196 at 32)

had he known about the offer and had received effective counseling about the offer; and (2) showing that his "failure to accept the proffered guilty plea led to a sentence substantially higher than the one offered." *Boyd*, 579 F.3d at 357. Notably, a defendant is not necessarily required to provide "objective evidence" that he would have accepted the plea offer. *Id.* Moreover, when considering subsection one's "effective counseling" component, a court must remember that "the constitutionally required performance is that of complete disclosure in conjunction with full advice and counsel regarding the client's potential sentencing exposure, options regarding plea bargains, and the potential consequences with respect to each option." *Id.* at 353. For the following reasons, the court concludes that Smith has established a reasonable probability that he would have accepted the government's April 2006 plea offer had he been notified of the plea offer and had received complete and accurate advice from trial counsel.

First, none of the voluminous *pro se* documents Smith filed throughout the course of this case explicitly assert that he was innocent, that he wanted to go to trial, or that he was presented with the April 2006 plea offer and rejected it after being counseled by Mr. Radulski.

Second, although "objective evidence" is not necessarily required for this inquiry, the affidavits and testimony of three of Smith's friends and/or family members provide some "objective evidence" that Smith would have accepted the April 1, 2006 plea offer. For instance, the record contains an affidavit from Ms. Jasmine Watkins dated February 16, 2012. According to the affidavit, Ms. Watkins "left several messages with Mr. Radulski's staff [before Smith went to trial in 2006] and requested return calls in regard to Smith's inquiry of a plea bargain." (D.I. 179 at 3) Ms. Watkins is Smith's cousin, and she testified during the November 2012 hearing that she left phone messages at Mr. Radulski's office regarding Smith's desire to plead, yet she never received a reply. (D.I. 190 at 52-52) Ms. Watkins also testified during the June 2013

14

hearing about a letter Smith wrote to her in December 14, 2005. (D.I. 196 at 79) In that letter, Smith wrote, "Everything is on the line so I got to win [the suppression motion] or take a good plea." *Id.* The record contains an affidavit from Smith's girlfriend, Ms. Cameana Brown, which is dated July 9, 2011. In her affidavit, Ms. Brown states that, "before Mr. Smith went to trial in August of 2006, I remember him telling me that he wanted to take a guilty plea instead of going to trial." (D.I. 179 at 4) Ms. Brown also testified during the November 2012 evidentiary hearing, and described how Smith indicated that he wanted to plead guilty during some of their phone conversations. (D.I. 190 at 58-59) Finally, the record contains an affidavit from Mr. Howard Porter, dated January 8, 2012. In his affidavit, Mr. Porter states that, "I remember [Smith] telling me, before his 2006 trial began, that he wanted to plead guilty instead of having a trial." (D.I. 179, at 2) Mr. Porter testified during the November 2012 hearing that he spoke with Smith "every so often" after his arrest in 2005, and that Smith said he was waiting to see what they were going to offer him. (D.I. 190 at 71-75)

Third, Smith's testimony that he would have accepted the April 11, 2006 offer was credible and persuasive. His straightforward and logical demeanor on this issue while testifying, and his consistent statements that he viewed the absence of an appellate waiver in the April 11, 2006 plea offer as a positive aspect, support his insistence that he would have accepted the April 11, 2006 if he had known about it and had been advised about the consequences of accepting it. (D.I. 196 at 10) For example, at one point, Smith testified that,

> I was a drug dealer. I sold drugs. That was the way I was back then and that's what I did. If I am going into court for something I know I did, I am trying to get the best plea I could get. [] Well, that was the plan, to try to, you know, get the case won favorably without having to go to a trial [by prevailing on the suppression motion]. The other alternative was, I got to take a plea, man.

15

(D.I. 196 at 41) Smith explained that he always pled guilty, and that he believed his only hope in this case to win the suppression motion or plead guilty. (D.I. 196 at 41-2) Smith also testified that he understood he would have faced a 25 year sentence under the plea offer, and that Ms. Kousoulis had informed him he was facing a natural life sentence if he was convicted at trial.[6] (D.I. 196 at 42-43)

Admittedly, at one point during the hearing, Smith testified that, "If I would have known about the plea, and I could appeal my suppression by taking a plea, that's what I would have done, because I did that in all of my cases. [] I am a career offender. [In] all of my cases I always pled guilty." (D.I. 196 at 28) The court acknowledges that this statement may be viewed as indicating that Smith would only have accepted the formal plea offer if it preserved his right to appeal the denial of his suppression motion (i.e., if it constituted a "conditional plea" under Fed. R. Crim. P. 11(a)(2)). Considering that the April 11, 2006 plea offer was not, in fact, a conditional plea that preserved Smith's right to appeal the suppression decision, (D.I. 196 at 46), one could surmise that Smith would not have accepted the April 11, 2006 plea offer even if it had been communicated to him. The court, however, concludes otherwise. To begin, when Mr. Levin asked, "If you had known about [] the guilty plea agreement of April 11, 2006, [], would you have accepted this plea agreement," Smith responded,

I definitely would have accepted it, **and the fact that it would have preserved my right to appeal the suppression was a bonus for me** to be even more willing to want to take that immediately.

(D.I. 196 at 42)(emphasis added) Smith also testified that,

---

[6]Mr. Radulski testified that he did not recall advising Smith about his potential life sentence. (D.I. 190 at 28, 33) He also did not recall providing Smith with an assessment of Judge Jordan's sentencing habits. (D.I. 190 at 48-49)

Nobody ever explained to me about the appeal rights because this [April 11, 2006] plea offer was never shown to me. I just took that [paragraph 9's reference to the United State's right to appeal] as it didn't waive my right to appeal. That was my own, because I have seen agreements that actually waive your right to appeal. You can't appeal. So you cannot appeal. So I took that as being that I wouldn't have been able to appeal the suppression or not. I don't know if I am correct or not.

\*         \*         \*         \*

Mr. Radulski said [during his testimony] that he didn't know whether there was an appeal about it. He said he just didn't know.

(D.I. 196 at 49) Indeed, Mr. Radulski testified that,

If [Smith] subsequently turned around and decided [to plead] – I would have looked at that closely, if that was something that he wanted to do, make sure he wasn't giving that right up [to contest the court's ruling on the motion to suppress] by pleading guilty to the charge.

(D.I. 190 at 42) The court then asked Mr. Radulski if, during his discussions with Smith, he had counseled Smith about the merits of the suppression issue and the likelihood of prevailing with that issue on appeal. Mr. Radulski answered, "[M]y recollection would be, or my feeling would be, it [the suppression motion] did not factor into his decision to go to trial." (D.I. 190 at 45-47)

When considered in totality, the aforementioned testimony indicates that, had Mr. Radulski discussed the April 11, 2006 plea offer with Smith in a constitutionally effective manner, he would have looked into whether the offer required Smith to relinquish his right to appeal the suppression decision and, if so, he would also have determined if Smith really wanted to relinquish that right by pleading guilty. In turn, Smith's testimony supports the inference that he would have agreed to the April 11, 2006 plea offer despite the inability to appeal the denial of the suppression motion because of the significantly lower 25 year sentence and because he viewed any preservation of his right to appeal the suppression motion as "a bonus" rather than as a prerequisite for his acceptance of the offer. The court also finds significance in the fact that

17

Smith pled guilty in all three of his prior criminal cases and not once elected to go to trial. For all of these reasons, the court does not view the fact that the April 11, 2006 plea offer was not a conditional plea and did not preserve Smith's right to appeal the denial of his suppression motion as determinative of the reasonable probability inquiry.

Finally, and perhaps most compelling for the court, is the striking disparity between the sentence under the April 11, 2006 plea offer and the actual sentence Smith received. Had Smith accepted the plea offer, and assuming Judge Jordan agreed with the government's recommended sentence, Smith would have been sentenced to 25 years of imprisonment.[7] This sentence is remarkably lower the 55 year sentence he received.

Given all of these circumstances, the court concludes that there is a reasonable probability that Smith would have accepted the April 11, 2006 plea offer if he had been properly advised about his options and the great disparity between the sentence under the plea offer and the potential sentence if convicted at trial.

### 2. Reasonable probability that the government would not have withdrawn the plea offer and the court would have accepted it

The government has not presented any evidence to suggest that it would not have entered into a plea agreement consistent with terms and conditions set forth in the April 11, 2006 plea offer. In turn, because Smith was not charged with additional offenses and there were no other

---

[7]Pursuant to the plea offer, the government agreed to recommend the greater of a "sentence of 25 years of imprisonment [minimum mandatory] or a sentence at the bottom of the applicable sentencing guideline range [which may have been computed with a three point reduction in the offense level as recommended by the plea offer.]" (D.I. 157-3) Neither party has provided a computation of the possible guideline range under the plea offer, nor have they mentioned if the possible guideline range would have been higher than the 25 mandatory minimum. Instead, both parties refer to the plea offer as providing for a minimum mandatory 25 year sentence. Given the absence of any discussion on this issue, it would appear that the possible guideline range was lower than the minimum mandatory 25 year sentence.

particular facts or intervening circumstances, there is no reason to conclude that the government would have withdrawn, or that the court would have failed to approve, the plea agreement. Accordingly, the court concludes that Smith has demonstrated a reasonable probability that the plea would have been entered without the prosecution cancelling it or the trial court refusing it.

### 3. **Reasonable probability that plea agreement would have resulted in a lesser sentence**

In this case, if Smith had pled guilty to count two under the terms of the April 11, 2006 plea offer, he would have faced a mandatory minimum sentence of 25 years of imprisonment. Smith was actually sentenced to 55 years of imprisonment. This disparity demonstrates a reasonable probability that the plea agreement would have resulted in a lesser sentence.

In sum, the court concludes that Smith has demonstrated that he was prejudiced by Mr. Radulski's failure to communicate the formal April 11, 2006 plea offer. Accordingly, the court will grant Smith's § 2255 motion with respect to the instant ineffective assistance allegation contained in claim two.

### B. **Proper Remedy**

Having elected to grant Smith's § 2255 motion, the court must next determine the appropriate remedy. In this case, if Smith had entered a plea agreement pursuant to the April 11, 2006 offer, Smith would have pled guilty to count two of the indictment, with counts one and three being dismissed upon the government's motion. However, Smith was convicted of all three counts in the indictment. Given these circumstances, the court concludes that the proper relief is for the government to re-tender the April 11, 2006 plea offer to Smith through his present counsel. *See Lafler v. Cooper*, 132 S.Ct. 1376, 1390-91 (2012). In the event Smith accepts the plea offer, the court will then vacate the judgment, and resentence Smith accordingly.

19

In the event Smith declines that plea offer, the court will then determine how to exercise its discretion, noting that the appropriate remedy in that event may be to refrain from vacating the sentence and leave the Smith's current convictions and sentence undisturbed. *Id.*

## IV. CERTIFICATE OF APPEALABILITY

A district court issuing a final order denying a § 2255 motion must also decide whether to issue a certificate of appealability. *See* 3d Cir. L.A.R. 22.2 (2011). A certificate of appealability is appropriate only if the movant "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The movant must "demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel,* 529 U.S. 473, 484 (2000).

In a memorandum opinion dated September 10, 2012 (D.I. 185), the court denied as meritless Smith's other grounds for relief but reserved ruling on whether to issue a certificate of appealability with respect to that decision. Having concluded to grant relief on a portion of claim two, the court is not entirely certain if it needs to address the issuance of a certificate of appealabilty for the previously denied claims. Nevertheless, to the extent it is required, the court declines to issue a certificate appealibility for claims one, the previously denied portion of claim two, and claims three through eight.

## V. CONCLUSION

Based on the foregoing, the court concludes that Smith is entitled to relief pursuant to 28 U.S.C. § 2255 for the portion of claim two alleging that defense counsel provided ineffective assistance by failing to communicate the formal April 11, 2006 plea offer to him. An appropriate order will issue.